**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| NARRAGANSETT PIER RAILROAD COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE TOWN OF NARRAGANSETT and STACEY GORMAN (in her capacity as the Narragansett Tax Collector),<br><br>Defendants. | C.A. No. 24-cv-0094-MSM-PAS |

**MEMORANDUM AND ORDER**

Mary S. McElroy, United States District Judge.

Before the Court are Cross-Motions for Summary Judgment filed by the plaintiff, the Narragansett Pier Railroad Company, Inc. ("NPRR"), and the defendants, Town of Narragansett and Stacey Gorman in her capacity as the Narragansett Tax Collector (collectively "Defendants"). For the following reasons, the Court GRANTS the Defendants' Motion for Summary Judgment (ECF No. 23) and DENIES NPRR's Motion for Summary Judgment (ECF No. 25).

## I. BACKGROUND

This matter arises out of an ownership dispute over some of the land used to build the Narragansett Pier Railroad—a roughly eight-and-a-half-mile railway that

ran between West Kingston and the Narragansett Pier. *See* ECF No. 23-1 at 2, 5. Originally funded and built by the Hazard family, this "short line" railroad formerly transported both people and freight throughout southern Rhode Island. *See generally* James N. J. Henwood, *A Short Haul to the Bay: A History of the Narragansett Pier Railroad* (1969). While this railroad initially experienced a fair amount of success during the late nineteenth and early twentieth centuries, it underwent a steady period of decline and ultimately ceased its operation in the mid-to-late twentieth century. *See id.* Notwithstanding this lengthy period of inactivity, NPRR brings this action against Defendants and seeks this Court's ruling that the land on which the railroad sat ultimately belongs to it. ECF No. 13 ¶¶ 8-11. Specifically, NPRR alleges that, among other things, Defendants violated the Takings Clause of the Fifth Amendment when they unlawfully took NPRR's property without providing just compensation. *Id.* ¶ 1.

NPRR's five-count Amended Complaint seeks the following relief: (1) a declaration pursuant to 28 U.S.C. § 2201(a) that Defendants have unlawfully taken NPRR's property in violation of the United States and Rhode Island constitutions; (2) a determination that Defendants have unlawfully taken NPRR's property in violation of those same constitutional provisions and that is actionable under 42 U.S.C. § 1983; (3) damages under theories of restitution and unjust enrichment under Rhode Island common law for taxes Defendants collected from third parties on the land at issue; (4) a determination that Defendants have failed to appraise NPRR's property and provide just compensation, as required by the United States and Rhode Island

Constitutions; and (5) a determination that Defendants' alleged taking deprived NPRR of its Due Process rights under the United States and Rhode Island Constitutions. *Id.* ¶¶ 32-58.

The voluminous facts underlying this ownership dispute are incomplete at best. *See* ECF No. 23-1 at 3. ("It has been presumed that the original condemnation awards and the accompanying deeds were lost in a fire and the corporate records of NPRR reflecting the same were lost over the years.") Setting aside the deficiencies present in the record, NPRR contends that it has owned the land at issue since 1953. ECF No. 26 ¶ 13. Confusingly, NPRR claims that it obtained ownership of the subject property from a now-defunct entity named the Narragansett Pier Railroad Company. *Id.* Notwithstanding NPRR's purported ownership of this land, it asserts that—over the past seventy-three years—Defendants have taken the land for their own use without compensating NPRR. ECF No. 23-1 at 13-14, 20.

In support of this theory, NPRR directs the Court to minutes taken from a July 1953 Narragansett Town Council meeting and a subsequent tax assessor investigation, which determined that NPRR's abandonment of this land resulted in a reversion to Defendants. ECF No. 26 at 5-6. Specifically, NPRR claims that the Town of Narragansett erred in reaching this determination and that the land rightfully belongs to it. ECF No. 23-1 at 1-2. NPRR also directs this Court to a 2005 Rhode Island Superior Court action supposedly indicating that NPRR lawfully owns the property. ECF No. 26 at 8-9. Finally, NPRR contends that, almost fifteen years ago,

Defendants amended their tax assessor maps in a manner that demonstrated their attempt to unlawfully take NPRR's property. *Id.* at 6-7.

Notwithstanding the decades that have elapsed since NPRR allegedly obtained ownership of this land, NPRR waited until March 8, 2024, to bring this action. *See* ECF No. 1. Specifically, NPRR claims that it became aware of this issue through communications that took place with a title insurance attorney in a separate, 2018 lawsuit brought by adjacent landowners seeking to vindicate their ownership rights over part of the disputed land. ECF No. 13 ¶ 19. Following this event, NPRR notified the Narragansett town solicitor that "Narragansett had illegally seized and transferred the [land]." *Id.* ¶ 20. After nearly three years of correspondence with Defendants, NPRR filed this action in this Court. *See id.* ¶¶ 21-27. The parties now move for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

To succeed on a motion for summary judgment, litigants must demonstrate that a genuine issue of material fact does not exist and that they are entitled to judgment as a matter of law. *See Boykin v. Genzyme Therapeutic Prods., LP*, 93 F.4th 56, 60 (1st Cir. 2024) (citing Fed. R. Civ. P. 56(a)). "The summary judgment ritual is standard fare: once the movant adumbrates an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the genuine issue of material fact." *Id.* (citation modified). Importantly, "to carry this burden, the nonmovant cannot simply rely on evidence that is conjectural or

problematic but, rather, must present definite, competent evidence." *Id.* (citation modified).

"Where, as here, a defendant moves for summary judgment on the basis of an affirmative defense—like the statute of limitations—the defendant bears the burden of proof and cannot attain summary judgment unless the evidence that [s]he provides on that issue is conclusive." *Ouellette v. Beaupre*, 977 F.3d 127, 135 (1st Cir. 2020). "If the defendant produces such conclusive evidence, the burden shifts to the plaintiff to establish that the statute of limitations does not apply." *Id.* (cleaned up).

## III. DISCUSSION

The Court's review of the record and the parties' arguments reveal that Defendants have successfully demonstrated NPRR's failure to file its claims in a timely manner. Although both parties have raised other arguments to support their claim of entitlement to summary judgment, the Court determines that its resolution of this threshold, statute of limitations question resolves NPRR's claims asserting violations of the state and federal constitutions. As a result, the Court will address these claims first before turning to NPRR's additional claim for unjust enrichment and its request for a declaratory judgment.

### A. NPRR's Constitutional Claims (Counts Two, Four, and Five)

With respect to the statute of limitations in the § 1983 context, federal courts must conduct the following analysis: (1) determine the state law in which the plaintiff's claim arose; (2) apply that state's limitations period for personal injury torts; and (3) apply the same state's "coordinate tolling rules." *Ouellette*, 977 F.3d at

135. While a plaintiff's cause of action becomes ripe when all of the acts comprising an alleged constitutional violation have taken place, courts may sometimes delay the operative date of a plaintiff's claim until the plaintiff knows, *or should know*, of the violation. *Id.* at 135-36.

Additionally, in *United States v. Kubrick*, the Supreme Court explained that a plaintiff may not plead ignorance of the law to buy themselves more time to sue. 444 U.S. 111, 123-24 (1979). Similarly—and critical to this case— to determine whether a plaintiff has knowledge of the facts underlying their putative claims, courts impose knowledge on plaintiffs in the following areas: (1) generally available information about the facts underlying their claim; and (2) the results of *any further inquiry* that a reasonable individual possessing these facts would undertake. *Donahue v. United States*, 634 F.3d 615, 624 (1st Cir. 2011).

Here, Defendants have shown that NPRR's § 1983 claims are barred by the applicable statute of limitations. Neither party disputes that Rhode Island law applies to this dispute—nor can they, this railroad and the property it sat on are in Rhode Island. As a result, Rhode Island's three-year statute of limitations governs NPRR's § 1983 claims along with NPRR's other state and federal constitutional claims.[1] *See Riggs v. Curran*, 863 F.3d 6, 10 (1st Cir. 2017); *Marrapese v. Rhode*

---

[1] With respect to NPRR's other constitutional claims: First, litigants generally lack the ability to bring freestanding claims alleging violations of their constitutional rights. *See Devillier v. Texas*, 601 U.S. 285, 291 (2024) ("Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts. Instead, constitutional rights are generally invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designated for that purpose, see, *e.g.*, 42 U.S.C. § 1983.") As a result,

*Island*, 749 F.2d 934, 936 (1st Cir. 1984) (applying R.I. Gen. Laws § 9-1-14). Applying Rhode Island's three-year statute of limitations, the undisputed facts here indicate that NPRR failed to file this action within the requisite timeframe.

At a minimum, the record reveals that NPRR should have sued Defendants disputing the ownership status of this land fifteen years ago—when Defendants amended their tax assessor maps in 2011. Moreover, the 2005 Superior Court proceedings concerning some of this property that NPRR cites in support of this purported taking also should have served as the catalyst for NPRR to realize that the status of this property was at issue. While NPRR claims that it found out about the facts giving rise to its claims in 2021, the record here indicates that an abundance of generally available information existed for decades prior to 2021 that should have reasonably prompted NPRR to either: (1) reach out to Defendants sooner regarding the disputed status of the property; or (2) file an action in state or federal court seeking to quiet title to the land. *See Ouellette*, 977 F.3d at 136-37. Based on NPRR's failure to file these claims in a timely manner, the Court determines that Rhode

---

the Court analyzes counts two, four, and five as if NPRR has brought them all as § 1983 claims. *See e.g.*, *Hickey v. Tompkins*, CA No. 19-11349-LTS, 2021 WL 858439, at, * 3 n.3 (D. Mass. Mar. 8, 2021) ("For the sake of simplicity, the Court shall analyze [plaintiff's] freestanding constitutional claims as though they were brought pursuant to Section 1983.").

Second, plaintiffs cannot bring claims that a defendant violated a *state* constitution under § 1983. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40,49-50 (1999) ("To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or the laws *of the United States*.") (cleaned up) (emphasis added). As a result, NPRR's state constitutional law claims cannot survive summary judgment.

Island's applicable statute of limitations bars it from bringing counts two, four, and five of their Amended Complaint.

**B. NPRR's Claim for Unjust Enrichment (Count 3)**

With respect to NPRR's claim for unjust enrichment, the Court concludes that NPRR lacks standing to recover tax revenue that Defendants have collected from third-party property owners. When determining whether a litigant may recover for unjust enrichment in Rhode Island, courts must evaluate whether a plaintiff can meet the three following elements:

> "First, a benefit must be conferred upon the defendant *by the plaintiff*. Second, there must be an appreciation by the defendant of such benefit. Finally, there must be acceptance of such benefit under such circumstances that it would be inequitable for [her] to retain the benefit without paying the value thereof."

*R&B Elec. Co., Inc. v. Amco Const.. Co., Inc.*, 471 A.2d 1351, 1356 (R.I. 1984) (emphasis added).

Here, NPRR cannot demonstrate that it has satisfied the first element of its unjust enrichment claim. NPRR itself did not confer the benefit at issue—tax revenue paid to the town of Narragansett—to Defendants themselves. Instead, these tax payments came from third parties that neither seek to recover this tax revenue nor have they participated in NPRR's action against Defendants. While NPRR makes a generalized argument that "harm" occurred based on Defendants' receipt of tax revenue from third parties, NPRR nevertheless fails to direct the Court to any valid authority that would allow it to redirect these ostensibly unlawfully collected tax

proceeds to *NPRR*—as opposed to the third-party taxpayers themselves. *See* ECF No. 27-1 at 18-20. As a result, the Court also grants Defendants' Motion for Summary Judgment on NPRR's unjust enrichment claim.

**C. NPRR's Request for a Declaratory Judgment (Count 1)**

Finally, the Court's grant of Defendant's Motion for Summary Judgment on the prior causes of action mandates the dismissal of NPRR's remaining request for a declaratory judgment under 28 U.S.C. § 2201(a). The Declaratory Judgment Act does not provide litigants with substantive rights or a freestanding cause of action. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950); *Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 452 (D. Mass. 2012). As a result of the Court's dismissal of NPRR's prior claims, leaving NPRR with no substantive claim upon which it can seek a declaration, the Defendants are entitled to summary judgment on Count 1. *See id.*

## IV. CONCLUSION

For these reasons, the Court GRANTS Defendants' Motion for Summary Judgment, ECF No. 23, and DENIES NPRR's Motion for Summary Judgment, ECF No. 25.

IT IS SO ORDERED.

Mary S. McElroy

_________________________________

Mary S. McElroy
United States District Judge

October 14, 2026